UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTAND DIVISION

JAMES S.[1]

        Plaintiff,

v.

COMMISSIONER,
Social Security Administration,

        Defendant.

Case No. 3:18-cv-00394-JO

OPINION AND ORDER

JONES, Judge:

James S. (Plaintiff) seeks judicial review of the final decision by the Commissioner of Social Security (the Commissioner) denying his application for Supplemental Security Income (SSI) disability payments under Tile XVI of the Social Security Act (the Act). This court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Because the

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member(s).

1 -OPINION AND ORDER

Commissioner's decision is not supported by substantial evidence, I REVERSE and REMAND for further proceedings.

## PROCEDURAL BACKGROUND

Plaintiff applied for SSI in 2014, alleging a disability onset date in September 2013. After the agency denied Plaintiff's claim for disability benefits, Plaintiff received a hearing before an Administrative Law Judge (ALJ) in September 2016. The ALJ issued his decision in November 2016, finding Plaintiff not disabled. After the Appeals Council denied Plaintiff's request for review, Plaintiff timely filed this action seeking judicial review.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on proper legal standards and supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, ___ U.S. ___, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). This court must weigh the evidence that supports and detracts from the ALJ's conclusion and "'may not affirm simply by isolating a specific quantum of supporting evidence.'" *Garrison v. Colvin*, 759 F.3d 995, 1009-10 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)). When the evidence is susceptible to more than one rational interpretation, the court must uphold the Commissioner's decision if it is "supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted). The reviewing court may not affirm the Commissioner's decision based on a ground that the agency did not invoke in making its decision. *Stout v. Comm'r*, 454 F.3d 1050, 1054 (9th Cir. 2006).

## DISCUSSION

The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant is disabled, the ALJ uses a five-step sequential inquiry. *See* 20 C.F.R. §§ 404.1520, 416.920; *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006). Here, steps two and five are at issue.

At step two, the ALJ determines whether the claimant suffers from any severe impairments. *See Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987). An impairment is "severe" if it significantly limits the claimant's ability to perform basic work activities and is expected to persist for twelve months or longer. *See id.*, 482 U.S. at 141. Here, the ALJ found Plaintiff suffered from several severe impairments, but found that Plaintiff's hearing impairment was not severe. Tr. 31.

At step four, the ALJ found Plaintiff could not return to his past relevant work. The ALJ then proceeded to step five, where the burden of proof shifts to the Commissioner to show that the claimant can perform other work that exists in significant numbers in the national economy, considering the claimant's Residual Functional Capacity (RFC), age, education, and work experience. *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999); *Bustamonte v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001). The ALJ found Plaintiff had the RFC to perform light work, with no more than frequent stooping, occasional climbing, and occasional handling and fingering with his right upper extremity, and was limited to simple, repetitive, routine tasks. Tr. 24.

At step five, the ALJ heard testimony from a vocational expert on whether a hypothetical person with Plaintiff's RFC and background could work in any competitive job. The ALJ

concluded that Plaintiff could perform light jobs that exist in significant numbers in the national economy, including the representative occupations of flagger and tanning salon attendant. Tr. 29.

Plaintiff argues that the ALJ committed harmful error by failing to include the hearing impairment in the RFC. I agree and conclude that this case must be remanded to further develop the record.

## I. The Prior ALJ's Findings on Plaintiff's Hearing Impairment

Plaintiff previously filed an application for SSI in 2011, which was denied in 2013. Tr. 116-27. Although the prior ALJ found Plaintiff not disabled, she also found that Plaintiff's hearing impairment was severe, and that Plaintiff was limited to environments "with no more than level 3 moderate noise (such as a business office)," and that he could not work "around hazards where auditory warnings are necessary" or "perform work that requires clear speech, clear communication skills or that relies on more than occasional hearing." Tr. 122.

### A. The Preclusive Effect of Prior ALJ Findings on Later Disability Applications

The prior ALJ's findings are relevant here because "findings concerning the claimant's residual functional capacity, education, and work experience are entitled to some *res judicata* consideration in subsequent proceedings." *Chavez v. Bowen*, 844 F.2d 691, 694 (9th Cir.1988). An ALJ generally may not reconsider a previous ALJ's findings on a claimant's RFC unless the ALJ relies on "new information not presented to the first judge." *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1173 (9th Cir. 2008).

In response to the Ninth Circuit's holding in *Chavez*, the Commissioner issued Acquiescence Rule (AR) 97-4(9). 62 F.R. 64038-01, 1997 WL 740404 (F.R.). Under AR 97-4(9), a claimant who was previously found disabled may rebut the presumption of continuing nondisability by showing a "'changed circumstance' affecting the issue of disability with respect

to the unadjudicated period, e.g., a change in the claimant's age category . . . ." 62 F.R. 64039-01. The AR further provides that when a claimant rebuts the presumption of nondisability, the agency may still be bound by the prior ALJ's findings "unless there is new and material evidence relating to such a finding[s]." *Id.*

Here, the ALJ correctly found that the presumption of continuing nondisability did not apply because Plaintiff's age category had changed since the prior decision. Tr. 18. However, the ALJ failed to discuss the prior ALJ's finding on Plaintiff's hearing impairment. I conclude that the Commissioner has not shown new and material evidence that would justify disregarding the prior ALJ's findings on the severity of Plaintiff's hearing impairment.

### B. The ALJ's Findings on Plaintiff's Hearing Impairment

The ALJ found that Plaintiff had "a down sloping to profound loss in very poor speech discrimination that was only 46 percent on the right and 60 percent on the left," showing that Plaintiff "was most likely a hearing aid candidate." Tr. 21; Tr. 340 (August 26, 2014 report of Frank Warren, M.D., on which the ALJ's finding was based). The ALJ also found, however, that "there is no evidence that [Plaintiff] followed through with obtaining hearing aids," and concluded that the hearing impairment was not severe and was "generally well-controlled with treatment." Tr. 21. Similarly, the ALJ rejected the opinions of state agency consultants on Plaintiff's hearing loss, stating that "the medical evidence of record reveals that the claimant never sought hearing aids." Tr. 27.

Substantial evidence does not support the ALJ's finding that Plaintiff never sought or obtained hearing aids. Michael MacVeigh, M.D., Plaintiff's treating physician, reported in July 2015 that Plaintiff "states he has one hearing aid that he obtained 5 months, Providence. Has been back and had it adjusted." Tr. 695. Dr. MacVeigh also reported Plaintiff's "hearing has

been addressed through hearing aids although he still has deficits." Tr. 697. Dr. MacVeigh's report, although not a model of clarity, undermines the ALJ's finding that Plaintiff failed to seek or obtain at least one hearing aid. The error was not harmless because the ALJ relied in part on this mistaken factual premise in omitting the hearing impairment from the RFC and the hypothetical given the vocational expert.

In rejecting the state agency consultants' opinions on Plaintiff's hearing loss, the ALJ also stated that "there did not appear to be any deficits in communication between the claimant and his various healthcare treatment providers." Tr. 27. I find this reason inadequate to discount the medical evidence that Plaintiff suffers from a significant hearing loss. Plaintiff's apparent ability to converse with a healthcare provider in a quiet medical office does not show that Plaintiff can hear adequately in a competitive work environment. *See King v. Astrue*, No. CV 09-8742 JCG, 2011 WL 2516373, at *6 (C.D. Cal. June 22, 2011). Plaintiff consistently told physicians that he continued to suffer from hearing loss. For example, in August 2016, Dr. MacVeigh noted that Plaintiff suffered from "congenital hearing loss." Tr. 639. Plaintiff reported the hearing loss to a rheumatologist, Aprajita Goel, M.D., in July 2016, while being examined for joint pain. Tr. 829. In August 2016, Dr. Goel noted that Plaintiff again mentioned hearing loss as a "current problem." Tr. 826.

Other than the unsupported findings that Plaintiff had failed to seek or obtain hearing aids, the ALJ did not cite new evidence that Plaintiff's hearing impairment had improved since the prior ALJ's findings in 2013. If anything, the new medical evidence in the record supports the prior ALJ's findings. For example, the prior ALJ did not have the report of Frank Warren, M.D., an ear, nose, and throat specialist, who evaluated Plaintiff's hearing loss in August 2014. Tr. 339. Plaintiff told Dr. Warren that he had suffered from congenital hearing loss and that his hearing

had worsened over the years. Tr. 339. Dr. Warren reported that audiogram tests showed "[b]ilateral normal hearing at 250 Hz, steeply sloping to a profound sensorineural hearing loss. There is asymmetry at most frequencies, right ear worse than the left." Tr. 337. Dr. Warren noted that Plaintiff had "very poor speech discrimination [which] was 46% on the right and 60% on the left. He is most likely a hearing aid candidate, but we will obtain a MRI scan to workup his asymmetry." Tr. 340. I conclude that the ALJ erred by failing to include hearing limitations in his RFC for Plaintiff.

## II. The ALJ Erred in His Assessment of Plaintiff's Hearing Impairment

The ALJ found at step two that Plaintiff's hearing impairment was not severe. The ALJ may find that an impairment is not severe "only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir.1996) (internal quotation marks omitted).

For the reasons stated above, I conclude that substantial evidence does not support the ALJ's finding that Plaintiff's hearing impairment was not severe. An ALJ's failure to identify an impairment as severe at step two may be harmless if the ALJ considered the effect of the impairment in the RFC. *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). Here, however, the ALJ's error was not harmless because the ALJ did not consider Plaintiff's hearing impairment in the RFC. *See Nichols v. Berryhill*, No. CV 16-71-BLG-SPW, 2018 WL 1254999, at *6 (D. Mont. Mar. 12, 2018) (holding that "even though the ALJ found Plaintiff's hearing loss was not severe . . ., the ALJ was still required to consider whether any residual limiting effects of her hearing impairment, in combination with her other severe impairments, affected her ability to work.").

### III. The ALJ Erred in Step Five Findings

At step five, the Commissioner must show a claimant can perform a significant number of jobs in the national economy despite the limits imposed by the claimant's RFC. *Gutierrez v. Colvin*, 844 F.3d 804, 806 (9th Cir. 2016); *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999). The ALJ may meet this burden by receiving testimony from a vocational expert based on a hypothetical question. The ALJ's hypothetical question "must set out all the limitations and restrictions of the particular claimant." *Embrey v. Bowen*, 849 F.2d 418, 423 (9th Cir. 1988); *Tackett*, 180 F.3d at 1098-99. Here, the ALJ erred because his hypothetical question to the vocational expert omitted Plaintiff's hearing impairment. The error is harmful because the ALJ relied on the ALJ's testimony in finding Plaintiff not disabled.

#### A. Plaintiff's Ability to Work as a Flagger

The ALJ found, based on the vocational expert's testimony, that Plaintiff could work as a flagger. A flagger "[c]ontrols movement of vehicular traffic through construction projects[,] . . . [d]irects movement of traffic through site, using sign, hand, and flag signals[,] ... [and w]arns construction workers when [an] approaching vehicle fails to heed signals to prevent accident and injury to workers." U.S. Dep't of Labor, Dictionary of Occupational Titles (DOT) 372.667-022 (4th ed. 1991). The DOT description indicates that flaggers must "[s]peak clearly and distinctly with appropriate pauses," which would be inconsistent with the prior ALJ's RFC finding that Plaintiff could not "perform work that requires clear speech, clear communication skills or that relies on more than occasional hearing." Tr. 122. The DOT description also indicates that flaggers are exposed to noise level 4, described as "loud," which would be inconsistent with prior ALJ's finding that Plaintiff would be limited to environments "with no more than level 3 moderate noise (such as a business office)." Tr. 122. Finally, the prior ALJ found that Plaintiff

could not work "around hazards where auditory warnings are necessary," which would also be inconsistent with working as a flagger. Because the ALJ failed to analyze the prior ALJ's RFC findings on Plaintiff's hearing impairment as required by *Chavez*, and did not rely on any relevant new evidence on the hearing impairment, the ALJ erred in finding that Plaintiff could work as a flagger given the job's hearing and speaking requirements. *See Lopez v. Astrue*, No. 1:10-cv-01012 OWW GSA, 2011 WL 3568844, at *7 (E.D. Cal. Aug. 12, 2011) (prior ALJ's findings that the plaintiff could not perform past relevant work and had no transferable skills "are res judicata and should have been adopted" by the subsequent ALJ when no new evidence was presented on the issues).

### B. Plaintiff's Ability to Work as a Tanning Salon Attendant

The ALJ found that Plaintiff could work as a tanning salon attendant, which the vocational expert described as "not the people that provide treatments but keep the tanning booths and suites clean and stocked." Tr. 57. The ALJ stated the DOT number for the tanning salon occupation was 359.567-014. Tr. 29. However, it is unclear whether tanning salon attendant is classified under that DOT listing or any other DOT listing. The Ninth Circuit recently noted that an ALJ had "misidentified [DOT] listing 359.567-014 as the listing for tanning salon attendant, when this listing actually refers to the semi-skilled job weight-reduction specialist." *Sievers v. Berryhill*, 734 F. App'x 467, 471 (9th Cir. 2018) (concluding ALJ's error in DOT listing was harmless because the ALJ relied on two other DOT listings); *Hastrich v. Comm'r*, No. 3:13-cv-00882-KI, 2014 WL 5355458, at *10 (D. Or. Oct. 20, 2014) (Commissioner "concedes" that "tanning salon attendant is not a job listed" in the DOT, and the closest matching job is medium level work). However, several decisions have found that the DOT and later on-line additions do include a tanning salon attendant job under listing 359.567-014. *See, e.g., Grady v. Colvin*, No. 4:14-cv-

9 -OPINION AND ORDER

01893-JAR, 2016 WL 695603, at *7 (E.D. Mo. Feb. 33, 2016) ("the job of tanning salon attendant has been assigned DOT code 359.567-014" on the U.S. Department of Labor's "O*Net OnLine" service); *King v. Comm'r*, No. 1:15-cv-1032 GTS/WBC, 2016 WL 6833058, at *5 (N.D.N.Y. Oct. 13, 2016) (noting without comment that the ALJ found the plaintiff could work as a tanning salon attendant under DOT listing 359.567-014). "If the expert's opinion that the applicant is able to work conflicts with, or seems to conflict with, the requirements listed in the [DOT], then the ALJ must ask the expert to reconcile the conflict before relying on the expert to decide if the claimant is disabled." *Gutierrez v. Colvin*, 844 F.3d 804, 807 (9th Cir. 2016) (citing SSR 00-4P, 2000 WL 1898704, at *2 (2000)); *Lamear v. Berryhill*, 865 F.3d 1201, 1205 (9th Cir. 2017) (ALJ's role is to resolve apparent conflict between the vocational expert's testimony and the DOT). The ALJ erred when he failed to seek a clarification from the vocational expert about the tanning salon attendant occupation.

At the hearing, the vocational expert testified that a person with Plaintiff's RFC could also work as a parking lot cashier. Tr. 56. As Plaintiff notes, the occupation of parking lot cashier requires talking and hearing frequently. Pl.'s Opening Br. 11-12, ECF No. 14. I need not consider this issue because the ALJ did not identify parking lot cashier as an occupation Plaintiff could perform.

## IV. Remand for Further Proceedings

When a court finds that the ALJ committed harmful error, the court may modify or reverse the Commissioner's decision "'with or without remanding the case for a rehearing.'" *Garrison,* 759 F.3d at 1019 (quoting 42 U.S.C. § 405(g)). Remand is proper when additional administrative proceedings could remedy the defects in the decision. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir.1989). Here, remand is necessary. In the prior proceeding, the ALJ

concluded that Plaintiff was not disabled despite her finding that Plaintiff's hearing impairment limited his ability to work. Further proceedings should clarify whether Plaintiff is able to work despite any limitations imposed by the hearing impairment in combination with his other impairments. *See Harman v. Apfel*, 211 F.3d 1172, 1178-79 (9th Cir. 2000) (remand justified when issues must be resolved before a determination of disability can be made); *Walling v. Astrue*, No. 11-cv-5204-JRC, 2012 WL 2979017, at *5 (W.D. Wash. July 20, 2012) (remanding for further proceedings because the ALJ did not include the plaintiff's hearing loss in the RFC and the record was ambiguous whether the hearing loss caused functional limitations).

## CONCLUSION

The decision of the Commissioner is REVERSED and REMANDED for further proceedings consistent with this Opinion and Order.

DATED September 11, 2019.

Robert E. Jones
United States District Judge